**In re Christopher F. JONES.**

**Bankruptcy No. 91–30703.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Oct. 18, 1994.

Richard Scheich, Toledo, OH, for movant.

John Gouttiere, Toledo, OH, for Joseph Young.

Louis Yoppolo, Trustee, Toledo, OH.

## OPINION AND ORDER DENYING MOTION TO REOPEN CASE AND DISMISSING MOTION TO ABSTAIN AS MOOT

WALTER J. KRASNIEWSKI,
Bankruptcy Judge.

This matter is before the Court upon Christopher F. Jones' (the "Debtor") motion to reopen his prior bankruptcy case (the "Motion") to which creditor Joseph L. Young ("Young") has filed an objection. Young has further moved that the Court abstain from hearing the Debtor's bankruptcy case. The Court finds that the Debtor's motion is not well taken and should be denied. The Court further finds that Young's motion for abstention should be dismissed as moot.

### FACTS

The Debtor filed a petition under chapter 7 of title 11 on February 7, 1991 (the "Case").

The trustee in bankruptcy filed a no-asset report in the Case on July 23, 1991.

The Debtor received a discharge on October 21, 1991. The Case was closed on December 31, 1991.

The Debtor filed the Motion on May 27, 1994.

The Debtor seeks to reopen the Case in order to discharge a loan from Young to the Debtor in the amount of $10,000.00 plus interest at 15% per annum (the "Loan"). See Affidavit of Joseph L. Young, Objector filed July 21, 1994 (hereinafter the "First Young Affidavit"), Exhibit A. According to Exhibit A attached to the First Young Affidavit, Young extended the Loan to the Debtor on January 12, 1990 and the Loan came due on July 12, 1990.

The Debtor's Affidavit states that "[his] fail[ure] to include [Young] as a creditor on [his] schedules was an unintentional oversight and mistake". See Affidavit of Christopher F. Jones filed August 12, 1994 (hereinafter the "Debtor's Affidavit"), at p. 3, para. 10. The Debtor states that, "[w]hen [he] prepared the schedules, [he] only listed those creditors [who he] considered creditors, either because they had mailed statements, bills, or invoices to [him], had made payment inquiries or demands, or [had] threatened litigation and the like". See Debtor's Affidavit, at p. 2, para. 8. The Debtor further states that "[c]reditor Young was the farthest thing from my mind at this time because we had not discussed repayment of the money and he was not pressuring me. Moreover, I was not thinking about the money that I owed him because I had not talked to him about this matter from the moment the money was given to my daughter [for certain college tuition and expenses] and because he told me not to worry about it and to only pay him back if and when I could." See Debtor's Affidavit, at p. 3, para. 9.

Contrary to the Debtor's statement that he had no contact with Young regarding the Loan, Young states that he "periodically inquired of [the Debtor] regarding the settlement of [a] personal injury case [from which the Debtor had assertedly agreed to repay the Loan]". See Affidavit of Joseph L. Young, Objector, filed August 25, 1994 (hereinafter the "Second Young Affidavit"), at p. 2, para. 5. Young further states that he "regularly inquired of [the Debtor] [as to] when Young might expect repayment [of the Loan]." See Second Young Affidavit, at p. 2, para. 5.

The Debtor has also adduced evidence that he viewed the Loan as in the nature of a gift, rather than as a debt. See Debtor's Affidavit, at p. 2, para. 4. The Debtor states that the "the debt creditor [Young] seeks to collect from me consists of money he offered

and gave to my daughter for college tuition and expenses." *See* Debtor's Affidavit, at p. 1, para. 1. The Debtor also states that he "never sought out or solicited the money creditor Young seeks to collect." *See* Debtor's Affidavit, at p. 1, para. 2. Further, the Debtor states that he was informed by Young that he could repay Young "if and when finances permitted". *See* Debtor's Affidavit, at p. 2, para. 4.

Not surprisingly, Young differs with the Debtor's apparent suggestion that the parties viewed the Loan as in the nature of a gift. Young states that he "lent [the Debtor] the money with the mutual understanding that it was a loan and it was the desire of both of us that said loan be memorialized." *See* Second Young Affidavit, at p. 1, para. 3.

Young has been employed as the Vice President and Chief Financial Officer of TL Industries, Inc. ("TLI") since 1989. *See* First Young Affidavit, at p. 1, para. 2. The Debtor, an attorney, represented TLI and a related corporation during a time period which included 1989 through 1991. *See* Second Young Affidavit at p. 1, para. 1. Young and the Debtor were also personal friends. *See* Second Young Affidavit at p. 1, para. 1.

Young states that he first obtained knowledge of the Debtor's bankruptcy petition in May of 1994. *See* First Young Affidavit, at p. 2, para. 7.

Young has provided the Court with copies of business correspondence and pleadings communicated by the Debtor to Young during 1990 and 1991. *See* First Young Affidavit, at p. 2, para. 4 and Exhibit B.

Young has further provided the Court with copies of certain personal correspondence between Young and the Debtor with regard to the Loan. *See* First Young Affidavit, Exhibit C, Personal Correspondence, at p. 10 (letter from Young to the Debtor dated February 3, 1993 requesting payment and threatening suit); Exhibit C at p. 12 (letter from Young to Debtor dated October 31, 1993 reminding Debtor that payments due); Exhibit C at p. 16 (note from the Debtor to Young dated November 30, 1992 indicating that Debtor would make $200.00 payment until "entire amount" was paid).

Exhibit E appended to the First Young Affidavit provides the Debtor's payment history for the Loan (the "History"). The History indicates that the Debtor made monthly payments to Young on the Loan in the amount of $200 per month during the period from November, 1992 through March, 1994. *See* First Young Affidavit, Exhibit E, at p. 2. The History indicates that the Debtor did not make a payment on the Loan for January, 1994. *See* First Young Affidavit, Exhibit E, at p. 2.

The parties differ as to whether there was a previous agreement between the Debtor and Young that a bill for legal services rendered by the Debtor's present law firm, Jones & Scheich, to William G. Young could be set off against the amount which the Debtor owed to Young on the Loan.

The parties have stipulated that the Court may rule on their respective motions based on the pleadings, memoranda and affidavits on file with the Court in lieu of a hearing. *See* Stipulation dated October 13, 1994.

### *DISCUSSION*
### BURDEN OF PROOF

The Debtor bears the burden of proof on his motion by the preponderance of the evidence. *In re Rosinski,* 759 F.2d 539, 542 (6th Cir.1985); *c.f. Grogan v. Garner,* 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991) (noting that preponderance standard generally applies in civil actions between private litigants).

### MOTION TO REOPEN UNDER § 350(b)

Section 350(b) permits a debtor to reopen the debtor's bankruptcy case in order to "administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b).

### Whether the Debtor's Motion Represents a Fraudulent Attempt to Discharge the Debt of Jones & Scheich

Initially, the Court rejects Young's argument that the Debtor's motion to reopen represents a "fraudulent[ ] and malicious[ ] attempt[ ] to abuse the United States Bankruptcy Code to discharge a business debt of

the law firm of Jones & Scheich" as the record does not support such argument. *See* Motion for Abstention and Objection to Motion Filed by Debtor to Amend Schedule to Add Creditor and Request for Hearing, p. 2, para. 5.

**Whether Young Has Been Prejudiced by the Debtor's Failure to Schedule Young**

The Sixth Circuit has indicated that " 'only the creditors' rights to participate in a dividend and to obtain a determination of dischargeability are of such importance that their loss mandates exception of a late scheduled debt from discharge.' " *Soult v. Maddox (In re Soult)*, 894 F.2d 815, 817–18 (6th Cir.1990) (quoting *In re Rosinski*, 759 F.2d at 542).

■ The fact that Young has incurred legal fees in attempting to collect the Loan does not represent prejudice sufficient to warrant denial of the Motion. *See In re David*, 106 B.R. 126, 130 (Bankr.E.D.Mich. 1989) (prejudice to creditor in incurring legal fees insufficient to deny motion to reopen case); *In re Baldwin*, 73 B.R. 113, 115 (Bankr.N.D.Ohio 1987) (prejudice to creditor in incurring legal fees insufficient to justify vacating order reopening case); *see also Parker v. North American Interstate, Inc.*, 966 F.2d 1453 (unpublished), 1992 WL 125391 (6th Cir.1992) (litigation expense did not represent sufficient prejudice to warrant denial of motion to reopen).

■ The fact that Young listed the Loan as an asset on a financial statement submitted to a local bank does not demonstrate that Young would be prejudiced if the Court were to reopen the Case, absent evidence that the bank actually extended a loan to Young in reliance on the financial statement. *Compare In re Harper*, 72 B.R. 211 (Bankr. S.D.Ohio 1987) (the fact that creditor incurred additional debt in reliance upon debtor's obligation to pay unscheduled debt warrant denial of motion to reopen).

**Whether the Debtor's Conduct in Failing to Schedule Young Warrants Denial of the Motion**

Despite the fact that Young has not been prejudiced by the Debtor's failure to sched-

ule the Loan in the Case, the Court concludes that the Debtor's reckless, and perhaps willful, conduct in omitting Young from his bankruptcy schedules warrants denial of the Motion. *See In re Smart*, 97 B.R. 380 (Bankr.S.D.Ohio 1989) (motion to reopen denied where debtor showed reckless disregard for accuracy of schedules).

■ "Though amendments to schedules are generally to be granted liberally, [a debtor] must advance some justification for the reopening sufficient to show that [the debtor] did not intentionally or recklessly avoid listing the debt." *Rosinski v. Boyd (In re Rosinski)*, 759 F.2d 539, 542 (6th Cir.1985) (citation omitted); *see also Soult v. Maddox (In re Soult)*, 894 F.2d 815, 817–18 (6th Cir.1990) (examining whether debtor's failure to schedule creditor was "willful, reckless, or fraudulent").

■ This Court, as the court in *In re Weintraub*, finds it "self evident that a debtor must exercise great care in compiling [the debtor's] list of creditors." *In re Weintraub*, 171 B.R. 506, 508 (Bankr.S.D.N.Y.1994) (citations omitted); *see In re Godley*, 62 B.R. 258, 262 (Bankr.E.D.Va.1986) (noting that debtor is required to affirm that schedules are true and correct under penalty of perjury and that criminal sanctions exist for the knowing and fraudulent making of a false oath) (citing 28 U.S.C. § 1746 and 18 U.S.C. § 152).

The Debtor, an attorney, has not persuaded the Court that he did not understand the significance of his actions at the time that he executed the documents evidencing the Loan. *C.f. In re Clapp*, 103 B.R. 126, 127–28 (Bankr.E.D.Mich.1989) (rejecting debtor's testimony that he did not understand that guarantee obligation was a debt in light of the fact that debtor was required to submit personal financial statements at time that obligation was incurred); *In re Gray*, 57 B.R. 927 (Bankr.D.R.I.1986) (rejecting debtor's testimony that he did not understand that guarantee obligation was a debt), *aff'd and remanded on other grounds*, 60 B.R. 428 (D.R.I.1986).

Furthermore, the Court cannot credit the Debtor's assertion that he inadvertently forgot to schedule the Loan because Young had

not sent the Debtor a bill or made a demand for payment. On the contrary, the Court credits Young's statement that he "regularly" inquired of the Debtor as to when Young might expect repayment of the Loan. *See* Second Young Affidavit, p. 2, para. 5.

The Debtor's numerous payments on the Loan from November, 1992 through March, 1994 and the personal correspondence between Young and the Debtor support Young's assertion that the Debtor intentionally omitted the Loan from his bankruptcy schedules.

The fact that the Debtor had business contacts with Young during the course of his attorney-client relationship with TLI and its related corporation further rebuts the Debtor's claim that he inadvertently failed to schedule the Loan. *See* First Young Affidavit, Exhibit B, Business Correspondence. Indeed, the Debtor's relationship with TLI, its related corporation and Young lends support to Young's argument that the Debtor made a conscious decision not to schedule the Loan. *C.f. In re Clapp,* 103 B.R. at 128 (noting that debtor/guarantor had motive not to list debt to creditor/supplier in debtor/guarantor's personal bankruptcy in order to preserve business relationship between creditor/supplier and debtor's corporation); *In re Gray,* 57 B.R. at 930 (noting that debtor's interest in preserving business relationship with creditor furnished motive for omitting creditor from schedules), *aff'd and remanded on other grounds,* 60 B.R. 428.

Further, the conclusory statements contained in the Debtor's Affidavit do not support the Debtor's argument that he failed to schedule the Loan because he was under economic duress at the time that he filed the Case. *See* Debtor's Affidavit, at p. 2, para. 3–8.

Lastly, the Court is unpersuaded by the Debtor's apparent assertion that he viewed the Loan as in the nature of a gift from Young. Most significantly, the written note indicates that Young and the Debtor intended to enter into a loan transaction. Moreover, the letters from Young to the Debtor contained in Exhibit C of the First Young Affidavit are consistent with Young's assertion that the parties viewed this transaction

as a loan. *See* First Young Affidavit, Exhibit C, Personal Correspondence, at p. 10 (letter from Young to the Debtor dated February 3, 1993 requesting payment and threatening suit); Exhibit C at p. 12 (letter from Young to Debtor dated October 31, 1993 reminding Debtor that payments due); Exhibit C at p. 16 (note from the Debtor to Young dated November 30, 1992 indicating that Debtor would make $200.00 payments until "entire amount" was paid). In addition, the fact that the Debtor made monthly payments to Young supports Young's contention that the debtor viewed their transaction as a loan.

In light of the foregoing, it is therefore

ORDERED that Christopher Jones' motion to reopen his prior bankruptcy case be, and it hereby is, denied. It is further

ORDERED that Joseph Young's motion for abstention be, and it hereby is, dismissed as moot.