**In re T. June DICKS, Debtor.**

No. 00–02653–8W7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 26, 2006.

Curran K. Porto, Tampa, FL, for Chapter 7 Trustee.

Peter R. Weisz, Weisz & Associates, Atlanta, GA, for Mercantile Bank.

Benjamin E. Lambers, Tampa, FL, Assistant United States Trustee.

### MEMORANDUM DECISION OVERRULING DEBTOR'S OBJECTION TO PROPOSED SALE OF HOMESTEAD PROPERTY

MICHAEL G. WILLIAMSON, Bankruptcy Judge.

In this chapter 7 case, the Trustee, Susan K. Woodard ("Trustee"), obtained an order granting her motion to sell the Debtor's Georgia homestead. The Debtor moved for rehearing on the basis that she had not been properly noticed with the motion to sell her homestead. While the Court found that the notice given was adequate, the Court nevertheless provided the Debtor the opportunity to present her objection on substantive grounds.

The Debtor now contends that the home cannot be sold because it is protected by Florida's unlimited homestead exemption. The unlimited homestead exemption under Article 10, Section 4, of the Florida Constitution is available only to debtors who were domiciled in the state for 180 days before filing of the case or for the greater part of 180 days if the debtor resided outside the state during a portion of that period.

It is undisputed that the Debtor's homestead has always been in the state of Georgia at 221 Arnold Avenue, Marietta, Georgia. *See, e.g.*, Debtor's Supplementary Objection to Proposed Sale of Homestead Property (Doc. No. 502). Accordingly, there is no basis for the Debtor to assert a claim of exemption under the Florida Constitution for her Georgia homestead.

Furthermore, a review of the record reveals that while the Debtor originally claimed the Georgia property as exempt, her claim of exemption was objected to and the Court sustained the objection. Accordingly, the Court has already ruled on the very issue that the Debtor now raises in connection with the sale of the property. For these reasons, and as more particularly discussed below, it is appropriate to overrule the Debtor's objection to the Trustee's sale of her homestead.

*Procedural History of the Case*

A. Service of the Motion to Sell Homestead

On September 12, 2005, the Trustee filed her Motion for Authority to Sell Property of the Estate Free and Clear of All Liens, Claims, and Interests (Doc. No. 480) ("Motion to Sell"). The Trustee sought to sell the Debtor's homestead, described in the Motion to Sell by its legal description and by its street address of 221 Arnold Avenue, Marietta, Georgia ("Georgia Homestead").

The Motion to Sell contains a certificate of service signed by counsel for the Trustee certifying that a copy of the motion was sent by regular U.S. Mail to the Debtor at the address of the Georgia Homestead. On September 14, 2005, Trustee's counsel filed an Amended Certificate of Service (Doc. No. 482) reflecting that the Motion to Sell was served on "September 14, 2004[sic]," via U.S. Mail on all creditors listed on the Court's creditor matrix. Included on the matrix was the Debtor, T. June Dicks, at the address of the Georgia Homestead.

On September 14, 2005, the Court issued its Notice of Preliminary Hearing (Doc. No. 481), noticing a hearing on the Motion to Sell for October 13, 2005. The national Bankruptcy Noticing Center ("BNC")

served the Notice of Preliminary Hearing, and a certificate of service was filed with the Court (Doc. No. 483), indicating service on the Debtor by U.S. Mail at the address of the Georgia Homestead on September 16, 2005.

The Court conducted a hearing on the Motion to Sell on October 13, 2005. The Debtor did not attend. At the hearing, the Court granted the Motion to Sell and thereafter entered an order on November 10, 2005, authorizing the Trustee to sell the Georgia Homestead (Doc. No. 489) ("Sale Order"). The BNC served the Sale Order on the Debtor by U.S. Mail at the address of the Georgia Homestead on November 12, 2005.

On December 1, 2005, the Debtor filed an Objection to Order on Motion for Authority to Sell Property of the Estate (Doc. No. 495) ("Objection"). In the Objection, the Debtor complained that the hearing on October 13, 2005, had been held without any notice to the Debtor. Thereafter, this Court entered an order allowing the Debtor to argue the merits of her objection and conducted a hearing on that matter on January 26, 2006. At that hearing, the Court concluded that the Motion to Sell and the Notice of Preliminary Hearing thereon were properly served, as set forth in Document Numbers 482 and 483, by Trustee's counsel and the BNC.

However, in deference to the Debtor's *pro se* status, the Court nevertheless gave the Debtor additional time to file a further objection to the sale, which was to be considered on the merits at another hearing. The Court gave the Debtor twenty days from January 26, 2006, to file and serve objections to the sale of the homestead property. Thereafter, the Debtor filed a timely Supplementary Objection to Proposed Sale of Homestead Property (Doc. No. 502). On March 16, 2006, this Court conducted a hearing, which the Debtor attended telephonically, to consider the arguments of the parties with respect to the matters raised by the Debtor.

■ The first of the Debtor's two arguments related to the notice of the Motion to Sell. It is the Debtor's contention that the defective notice is fatal to the Trustee's desire to sell the Georgia Homestead. Based on the foregoing record, it is the Court's conclusion, however, that the Debtor had sufficient notice of the proposed sale. Even if the Debtor did not receive the Motion to Sell, as she contends, she admitted at the hearing on January 26, 2006, that she did receive a copy of the Notice of Preliminary Hearing.

The Debtor explained that because the legal description was not contained in the Notice of Preliminary Hearing, she did not have adequate notice that it was her homestead that was going to be sold. As set forth in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, (1950), "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature that it reasonably convey the required information ... and it must afford a reasonable time for those interested to make their appearance. But if with due regard for practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied." *Id.* at 314–315, 70 S.Ct. 652 (citations omitted). Certainly when the Debtor received the Notice of Preliminary Hearing, she was on notice that the Trustee was going to sell property of the estate, which included the Georgia Homestead. Her failure to review the court file and look at the referenced motion does not

give her grounds to later complain of lack of notice. *See In re Williamson*, 15 F.3d 1037, 1039 (11th Cir.1994) (finding no due process violation as notice of proceeding sufficient to put party on notice of pending action); *In re Alton*, 837 F.2d 457, 459–460 (11th Cir.1988) (same).

In any event, any claim of lack of notice has been cured by the fact that this Court, notwithstanding the finding that proper notice was given, still gave the Debtor the opportunity to argue the merits of her objection at the hearings held on January 26, 2006, and March 16, 2006. *See In re Brooks*, 323 F.3d 675, 677–678 (8th Cir.2003) (finding any prejudice to debtor from lack of notice of bankruptcy court's decision to allow creditor to proceed with foreclosure sale cured by subsequent hearing); *In the Matter of Omni Video, Inc.*, 60 F.3d 230, 233 (5th Cir.1995) (stating that lack of notice cured by hearing on defendants' motion to reconsider final judgment); *In re Wieseler*, 934 F.2d 965, 968 (8th Cir.1991) (finding failure to hold hearing on motion to lift stay cured by holding hearing on debtor's motion for reconsideration).

B. The Debtor's Substantive Objection to the Motion to Sell

The substantive basis for the Debtor's objection to the sale is that she believes she is entitled to utilize Florida homestead law notwithstanding the fact that at all times material she has been a resident of the state of Georgia. However, a review of the procedural history of this case reveals that the Debtor has already had the opportunity to make these arguments in connection with objections that were filed to her claim of exemptions. Those objections were sustained on the basis that the Florida homestead exemption is simply not available.

By way of background, the Debtor filed this case on February 24, 2000. In the schedules originally filed with the court, the Debtor claimed "one-half interest in homestead" as exempt under Article 10, Section 4, of the Florida Constitution. There is no indication in the original schedules of the legal description of the homestead or whether it was located in Florida. However, the Debtor testified at her Section 341 meeting of creditors on March 24, 2000, that she had at all times been a resident of Georgia, domiciled at 221 Arnold Avenue, Marietta, Georgia. She further testified that the only factual basis for filing the case in this district was that certain commercial real estate that she had acquired in 1991 and that had been foreclosed upon in 1992 was the basis for the judgment held by the primary creditor in the case, Central Bank of Tampa ("CBOT"). Objections to Claim of Exemptions at ¶ 2 (Doc. No. 21).

Following the Section 341 meeting, CBOT filed an objection to the Debtor's claim of exemptions, including, *inter alia*, an objection to the claim of the Florida homestead exemption on the basis that the Debtor was a Georgia resident and would not be entitled to claim a Florida homestead. On December 21, 2000, the Court sustained this objection to exemptions, with leave granted to the Debtor to file an amended or revised Schedule C within twenty days from December 14, 2000. Order Denying Confirmation at ¶ 6 (Doc. No. 80).

After conversion of the case to chapter 7 on December 14, 2000, the Trustee also objected to the Debtor's claim of exemptions, asserting, *inter alia*, that there was no basis for the Debtor's claim of her real property as exempt. Trustee's Objection to Debtor's Exemptions (Doc. No. 87). The Debtor responded to that on April 2, 2001, stating that she did not oppose the

entry of an order sustaining the Trustee's objection so long as the Court granted the Debtor sufficient time to file an amended schedule of exemptions. Response to Trustee's Objection to Debtor's Exemptions (Doc. No. 91).

Thereafter, this Court entered an order on the Trustee's objection to the Debtor's exemptions and provided in relevant part that the Trustee's objection to the Debtor's claim of exemptions as to the real property was sustained. "The claim of exemptions is disallowed and the real property shall be subject to administration by the Trustee." Order on Trustee's Objections to Debtor's Exemptions at ¶ 1 (Doc. No. 94) ("Order on Exemptions").

The Court, however, gave the Debtor a further opportunity to file an amended Schedule C to exempt personal property of a value not to exceed that permitted by the applicable exemptions. Order on Exemptions at ¶ 3. The Order on Exemptions also provided that if the Debtor failed to file and serve an amended Schedule C within twenty days, the disallowance of the exemption "shall be with prejudice without further order."

On May 7, 2001, the Debtor filed an Amended Schedule C, which not only revised the previous claim of exemptions by specifying Georgia law, not Florida law, as the law that was applicable, but also with respect to the Georgia Homestead, claimed as exempt the Debtor's "interest in homestead at 221 Arnold Avenue, Marietta, Georgia 30066." Amendment to Schedule C (Doc. No. 95). The claim of exemption was under O.C.G.A. Section 44–13–100, and claimed an exemption in the amount of $45,000.

While the Debtor's filing in May 2001 of the Amended Schedule C did not reflect what interest the Debtor held in the Georgia Homestead other than simply specifying that it was an "interest," the Amended

Schedule A (Doc. No. 77), which had been filed on December 11, 2000, reflects ownership by referencing, "see attached 7/19/95 judgment."

The referenced judgment is one that is familiar to the Court. It has been involved in previous litigation in this case, including the adversary proceeding styled *Susan Woodard, Trustee v. Mercantile Bank et al.,* Adv. Pro. No. 04–530. Presumably the Debtor's reference to the judgment was to the fact that the judgment set forth that title to the subject property "has been revested in the name of Defendant T. June Dicks."

While the Debtor did file the Amended Schedule C claiming the Georgia homestead exemption of $45,000, the Amended Schedule C did not contain a declaration with the signature of the Debtor verified as required by Federal Rule of Bankruptcy Procedure 1008. It also did not contain an appropriate proof of service in compliance with Federal Rule of Bankruptcy Procedure 1009(a). Moreover, the Amended Schedule C was not served on all creditors. Accordingly, the Court, following routine practice, entered an order striking the amendment on May 10, 2001. Order Striking Amendment (Doc. No. 98) ("Order Striking"). The Order Striking was without prejudice for the Debtor to file another amended Schedule C curing the deficiencies. A week later, on May 17, 2001, Debtor's counsel filed a motion to withdraw (Doc. No. 103). This motion was granted on May 25, 2001 (Doc. No. 106). The Debtor never filed an amended Schedule C.

Therefore, the record as it exists shows that the only claim of exemptions in this case that has not been stricken is the Debtor's original claim of exemptions under Florida law. The Court has already sustained an objection to that original claim of exemptions.

Accordingly, it appears that the Debtor has fully had the opportunity to make her arguments that she is entitled to the homestead exemption under Florida law. She has made those arguments in connection with the objections to her claim of exemptions filed by both the Trustee and CBOT. Her arguments were unavailing and resulted in a denial of her claim of Florida exemption. Additionally, the Court struck the Debtor's filing claiming a Georgia exemption based on procedural infirmities that were never corrected.

Furthermore, it is clear that this Court's prior decision to sustain the objection to the Debtor's claim of Florida exemption on the merits was amply supported by the law. As discussed by the Honorable Alexander L. Paskay in the case of *In re Laing*, 329 B.R. 761, 769 (Bankr.M.D.Fla. 2005), it is clear that the protections afforded by the Florida Constitution dealing with the homestead are limited to the law in effect in the place in which the Debtor's domicile had been located for 180 days immediately preceding the date of filing of the petition, or for the longer portion of such 180–day period than in any other place.

■ Specifically, section 522(b)(2)(A) of the Bankruptcy Code provides that a Debtor may claim an exemption for property that is exempt under "state or local law that is applicable on the date of filing of the petition at the place in which the Debtor's domicile has been located for the 180 days immediately preceding the date of filing of the petition, or for a longer portion of such 180–day period than in any other place. . . ." 11 U.S.C. § 522(b)(2)(A). While some may perceive Florida to have been a place where debtors could flee their creditors in other states, buy large homesteads, then have those homesteads protected by Florida law, even in those cases the Florida homestead law would only protect the homestead acquired in Florida.

*See, e.g., Havoco v. Hill,* 255 F.3d 1321 (11th Cir.2001).

The idea that someone with no connection to Florida, other than that the primary debt owed by the person resulted from a Florida investment of many years prior, can file bankruptcy in Florida to avail herself of Florida exemption laws for property located in other states is without any support under Florida law. Indeed, if this were the law, it would open the floodgates to parties remaining in their home states but using the generous Florida exemption laws simply by virtue of filing in the state of Florida without ever having to become actual residents domiciled within the state. This simply is not the law.

Accordingly, it is clear that the Debtor has made these arguments before. The Court resolved these arguments by a final order sustaining the objections to her claimed exemptions. Furthermore, it is also clear that even if this Court were to allow her to reargue her claim of Florida homestead on the merits, her claim of exemption would not stand. The Georgia Homestead is property of this bankruptcy estate subject to the exclusive jurisdiction of this Court. *See, e.g., Central Virginia Community College v. Katz,* —— U.S. ——, 126 S.Ct. 990, 996, 163 L.Ed.2d 945 (2006). It shall be sold and the proceeds paid to the Trustee. Any claim of a lien in the proceeds will attach to the proceeds subject to a future determination of the validity, priority, and extent of any such liens. These issues will be determined by this Court as a core matter under 28 U.S.C. section 157(b)(2)(K).

Accordingly it is

ORDERED that Debtor's Supplementary Objection to Proposed Sale of Homestead Property is overruled.